[Civ. No. 4026.   Fourth Dist.   Apr. 27, 1950.]

AL HOLMAN et al., Appellants, v. STATE OF CALIFORNIA et al., Respondents.

Werdel & DiGiorgio for Appellants.

Bodkin, Breslin & Luddy, J. F. Goux, Percy C. Heckendorf, Robert H. Schwab, Jr., Norris J. Burke and Peter E. Giannini, Amici Curiae on behalf of Appellants.

Fred N. Howser, Attorney General, Timothy W. O'Brien, Deputy Attorney General, C. R. Montgomery, Robert E. Reed, Russell S. Munro and Harry S. Fenton, Attorneys, Department of Public Works, for Respondents.

MUSSELL, J.—Action for damages to property by reason of certain highway improvements.

Plaintiffs appeal from the judgment in this, an action in inverse condemnation proceedings, brought against the state for damages to property by reason of the construction of a dividing strip in the state highway adjoining plaintiffs' property. A general demurrer to the amended complaint was sustained without leave to amend and judgment for the defendants followed.

The complaint alleges ownership by plaintiffs of property situated on the southwest corner of First Street and United States Highway 99 in Bakersfield. The highway at this point extends north and south. Plaintiffs' frontage is 146.62 feet on the highway and approximately 492 feet on First Street, which extends westerly from the highway and bounds plaintiffs' property on the north. Brundage Lane (the next street south of plaintiffs' property) crosses the highway and is approximately 200 feet south of plaintiffs' south property line. Second Street is approximately 600 feet north of First Street, is parallel thereto and extends westerly from the highway. V Street extends northerly from Brundage Lane, is one block west of the highway and crosses First and Second Streets. It is alleged that Highway 99 is divided by a center dividing strip and concrete island, approximately 8 inches high and 6 feet wide, down the center of said highway and across the intersection of First Street therewith, thus prohibit-

ing northerly bound vehicular traffic on the highway from entering plaintiffs' property at that corner; that the building located on the premises of plaintiffs is especially designed for carrying on the business of servicing and repairing heavy highway trucks and equipment; that prior to the erection of said dividing strip, plaintiffs' property was easily accessible by heavy truck traffic proceeding northerly on said highway but as a proximate result of the construction of such dividing strip, all reasonable access to plaintiffs' property by such northbound traffic has been prevented and likewise, vehicles leaving plaintiffs' property may not cross the southbound lane and immediately make a left hand turn and proceed in a northerly direction, resulting in the depreciation of the reasonable market value of plaintiffs' property.

It is the contention of the plaintiffs and of the amici curiae that the plaintiffs, as abutting owners, have the right to the use of the highway in either direction and that they are entitled to compensation for any damage occasioned by the construction of a public work or improvement in the highway interfering with their access to the next intersecting street in either direction from their property.

The defendants contend that the case involves solely "circuity of travel" or "diversion of traffic" which is not compensable because no violation of property rights is involved; that depreciation in value, if any, resulted solely from traffic regulation under police power.

The plaintiffs, in support of their contention, refer to article I, section 14, of the California Constitution and cite the following cases:

*Rockridge Place Co.* v. *City of Oakland,* 61 Cal.App. 791 [216 P. 64], in which the city had excavated a street and the sidewalk adjoining plaintiff's property to a depth of nearly 30 feet lower than it had formerly been, thus leaving the property at the property line on a cliff;

*Eachus* v. *Los Angeles Consol. Elec. R. Co.,* 103 Cal. 614 [37 P. 750, 42 Am.St.Rep. 149], where the defendant railway company, in preparing a street adjoining plaintiff's lot for the construction of its railroad, made an excavation in the street, the excavation being 28 feet in depth at one corner of the plaintiff's property, gradually diminishing to a depth of 20 feet at the other corner, and extending to within 10 feet of the boundary line of the lot fronting on the street, thus leaving the property on a bluff with no possibility of motor vehicles entering or leaving the property from the highway;

*Eachus* v. *Los Angeles,* 130 Cal. 492 [62 P. 829, 80 Am.St. Rep. 147], wherein the city excavated the street adjoining plaintiff's property to a depth of 28 feet up to plaintiff's property line;

*Reardon* v. *San Francisco,* 66 Cal. 492 [6 P. 317, 56 Am.St. Rep. 109], where the complaint alleged that the city, in improving an adjoining street, deposited certain heavy material in the street and in consequence of the presence of the weighty material on the soil underlying the street, the adjoining lot of plaintiffs was forced upwards with the result that the foundations of certain houses located on plaintiffs' lot were injured.

*McCandless* v. *Los Angeles,* 214 Cal. 67 [4 P.2d 139], wherein the plaintiff alleged that access to the center one-third of her property abutting on Sunset Boulevard was substantially impaired by reason of the construction at that point of an open cut and stairway surrounded by an iron railing, which railing was above the surface of the sidewalk. This cut and stairway, which was the approach to a subway, was approximately 20 feet in length and paralleled the center portion of plaintiff's property line and was about 7 feet distant therefrom. Direct access from the plaintiff's property to any portion of the street along this 20-foot strip was, therefore, physically cut off entirely. The court held that under the facts alleged it could not be said as a matter of law that the plaintiff under her allegation had suffered no damage.

*Wolff* v. *Los Angeles,* 49 Cal.App. 400 [193 P. 862], in which it was held that the grading of one block of a city street located a considerable distance from the plaintiff's property and beyond another cross street, which in no way interfered with the easy and convenient access to plaintiff's property by other streets, does not show that damage contemplated by section 14, article I, of the Constitution, although the use of the street as a thoroughfare near plaintiff's property was not as extensive as before such grading.

*People* v. *Ricciardi,* 23 Cal.2d 390 [144 P.2d 799], where prior to the construction of the improvement, the property owner had direct access to the through traffic on the highway. After the construction of the improvement, the property no longer fronted on the through highway but on a service or access road, and additional travel was required to go from the property in question by means of the access road to the through traffic lane of the highway. A factual situation far different from the case before us where plaintiffs have access

from every point on their property to the highway, the same as before the construction of the improvement complained of.

The case of *Bacich* v. *Board of Control*, 23 Cal.2d 343 [144 P.2d 818], also cited, is clearly distinguishable on its facts from the facts pleaded by the plaintiffs herein. This case involved the creation of a *cul de sac* or dead end street as a result of the highway construction, and it was held in that case:

"Where formerly plaintiff had an outlet from his property at both ends of Sterling Street, he now has access at only one end, which definitely affects ingress to and egress from his property. It would seem clear that the reasonable modes of egress and ingress would embrace access to the next intersecting street in both directions."

The facts herein pleaded by the plaintiffs show that no dead end street was created by the mere division of United States Highway 99 into opposing lanes of traffic.

In all of the foregoing cases in which it was held that compensation must be paid there was either physical injury to an owner's property itself, as in the Reardon case, or a physical impairment of access from the property to the street, whether caused by change of grade, as in the Eachus cases and the Rockridge case, or by physical impairment of the property to the street by the means of the construction of a physical barrier as in the McCandless case, or by removing the property from the through highway and placing it on a side or service road as in the Ricciardi case, or by the creation of a dead end street as in the Bacich case. None of these cases involve the division of a highway into separate roadways by concrete islands or division strips and all are factually different from the case at bar. In this connection, it should be noted that the rule that reasonable modes of egress and ingress embrace access to the next intersecting street as announced in the Bacich case, *supra,* is not applicable here for plaintiffs have access to Brundage Lane, the next intersection to the south, and to First Street on the north, adjoining their property.

In the case of *Beckham* v. *City of Stockton*, 64 Cal.App.2d 487 [149 P.2d 296], the action was brought by owners of property abutting on East Worth Street, in Stockton, to recover damages alleged to have been sustained by them as the result of the construction of a subway in Wilson Way, a street which intersects East Worth Street at one end of the block in which their properties are located. The construction of the

subway left the property owners with two outlets, as formerly, except that the subway acted, in effect, as a center dividing barrier in Wilson Way and necessitated a certain amount of additional travel in order to reach the various portions of the city from plaintiffs' properties. The court held that such mere inconvenience and circuity of travel constituted no grounds for the recovery of damages and that plaintiffs' easement could not be held to embrace a right to pursue the most convenient course from their properties to such destination as they might seek to reach. The court further stated that the plaintiffs' access in one direction was not lost by reason of the construction of the subway but that the route to be pursued was merely rendered less convenient. The court in that case said, at page 502:

"Not every depreciation in the value of property by reason of a public improvement can be made the basis of an award of damages. (*Wolff* v. *City of Los Angeles,* 49 Cal.App. 400, 402 [193 P. 862]; *Eachus* v. *Los Angeles etc. Ry. Co.,* 103 Cal. 614, 617 [37 P. 750, 42 Am.St.Rep. 149]; *People* v. *Ricciardi, supra,* at p. 396.) For instance, diversion of traffic is not a proper element to be considered in computing damages. (*Rose* v. *State of California, supra* [19 Cal.2d 713 (123 P.2d 505)], at pp. 737, 740; *City of Stockton* v. *Marengo,* 137 Cal. App. 760, 764 [31 P.2d 467]; *People* v. *Ricciardi, supra,* at pp. 397, 400.) Regulations such as the prescribing of one-way traffic or the prohibiting of left-hand turns may interfere to some extent with right of access without furnishing a basis for recovery of damages even by an abutting owner. (See note, 100 A.L.R. 487, 491-493.) In *Eachus* v. *Los Angeles etc. Ry. Co., supra,* the court said: 'The damage for which compensation is to be made is a damage to the property itself, and does not include a mere infringement of the owner's personal pleasure or enjoyment. Merely rendering private property.less desirable for certain purposes, or even causing personal annoyance or discomfort in its use, will not constitute the damage contemplated by the constitution; . . ..' "

The facts alleged in the instant action indicate that the real basis of plaintiffs' claim is diversion of traffic from their business. However, the rule is, as stated in *Rose* v. *State of California,* 19 Cal.2d 713, 737 [123 P.2d 505]:

"The damage suffered by plaintiffs is, as we have seen, the interference with their right of access. The diversion of traffic is not a proper element to be considered in computing those damages inasmuch as a landowner has no property

right in the continuation or maintenance of the flow of traffic past his property.''

In *City of Los Angeles* v. *Geiger*, 94 Cal.App.2d 180, 191 [210 P.2d 717], it was held that:

''Injury to business is a detriment to its owner but it is not a damage to the property on which it is conducted, hence a property owner is not entitled to damages for loss of business caused by an improvement or by diversion of traffic. (*Rose* v. *State*, 19 Cal.2d 713, 737 [123 P.2d 505]; *Oakland* v. *Pacific Coast L. & M. Co.*, 171 Cal. 392, 399 [153 P. 705].''

In *City of Stockton* v. *Marengo*, 137 Cal.App. 760 [31 P.2d 467], the court held that the evidence as to the damage caused by the diversion of traffic by reason of highway construction was properly stricken from the record because diminution in value resulting therefrom was not caused by any injury for which the landlord was entitled to recover damages.

Damages resulting from the exercise of police power are not compensable. (*Simpson* v. *City of Los Angeles*, 4 Cal.2d 60 [47 P.2d 474].) It seems quite clear that the division of a highway is an exercise of the police power being directly intended for the public safety.

Statutory authority for a center division strip, such as that under consideration in this case, is found in section 144 of the Streets and Highways Code. Under that section the state highway engineer is authorized to divide or separate any state highway into separate roadways whenever there is particular danger to the traveling public of collision between vehicles proceeding in opposite directions or from cross traffic by constructing curbs, central dividing sections or other physical separations, or by signs, marks or other devices in or on the roadway appropriate to designate the dividing line.

As was said by Mr. Justice Edmonds in the Bacich case, *supra,* at page 363:

''But the traveling of additional distances occasioned by modern traffic engineering to make travel more safe and to adapt the highway system to the adequate disposal of the increasingly heavy burden of automobile traffic—as, for example, by the construction of divided highway for various types of traffic, or the re-routing of traffic by one-way regulations or the prohibition of left-hand turns—is an element of damage for which the property owner may not complain in the absence of arbitrary action . . . And, therefore, in testing the merits of the majority rule, mere 'circuity of travel,' in the sense

that it refers to the additional distance required to be traversed because of a proper highway construction, should not be used to justify the allowance of compensation to the owner abutting upon the street in the block where the obstruction exists.''
and by Mr. Justice Traynor, at page 371:

''. . . The California Vehicle Code and city traffic ordinances abound with regulations that limit a property owner's freedom of movement upon the street on which his property abuts. Thus ''U'' turns or the making of left turns upon emerging from a building or private driveway are frequently prohibited, and the diversion of traffic into one-way streets is common. Frequently traffic moving in opposite directions is separated by some physical barrier such as a raised curbing. These restrictions have the same effect whether they ensue from traffic regulations or physical obstructions and there is no more reason to allow compensation because of the resulting diminution in property values or the inconvenience of circuity of travel in the one case than in the other.''

The facts pleaded herein show that the highway upon which plaintiffs' property abuts is not closed and that plaintiffs, once on the highway to which they have free access, are in the same position and subject to the same police power regulations as·every other member of the traveling public. Because of a police power regulation for the safety of traffic, they are, like all other travelers, subject to traffic regulations. They are liable to some circuity of travel in going from their property in a northerly direction. They are not inconvenienced whatever when traveling in a southerly direction from their property. The re-routing or diversion of traffic is a police power regulation and the incidental result of a lawful act and not the taking or damaging of a property right. (*People* v. *Ricciardi, supra,* 399.)

If the contention of the plaintiffs herein is sustained, the right of the state to control the traffic as a safety regulation would be definitely curtailed and traffic islands or double lines in the highway to separate through traffic would be prohibited. The damage of which plaintiffs complain would be the same if no division strip had been constructed on the highway in question but that double white lines had been painted on the highway and a ''no left turn'' sign had been erected, or if the entire highway had been designated as a one-way street.

We conclude, therefore, that the plaintiffs failed to state

a cause of action in their amended complaint and the judgment is, therefore, affirmed.

Barnard, P. J., and Griffin, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied June 22, 1950.   Carter, J., voted for a hearing.