[Civ. No. 38797. First Dist., Div. Three. Feb. 2, 1977.]

WILLIAM ENGLISH, Plaintiff and Appellant, v.
MARIN MUNICIPAL WATER DISTRICT et al.,
Defendants and Respondents.

726

## COUNSEL

Claxon & Anthony and Colin C. Claxon for Plaintiff and Appellant.

James J. Duryea, Stephen F. O'Neill, Connolly, Hothem & Flint and James L. English for Defendants and Respondents.

## OPINION

**GOOD, J.\***—Appellant William English sued respondents Marin Municipal Water District and Pacific Cascade Land Company, Inc., for injuries sustained when appellant was riding his motorcycle uphill on a path or trail across Cascade's and onto the district's property. At the crest of a hill and at or near the common boundary there was a 25-foot precipice which the complaint characterized as "the trap at the top of the hill." This was the result of an excavation made in grading a level area to accommodate a large water tank. The complaint charged that respondents knew or were chargeable with knowledge that numerous cyclists used the trail for recreational purposes and that the hazard was such that the landowners had a duty to provide some "notice, fencing, or other protective device" to warn cyclists of the danger of propelling themselves over the sudden drop. On discovery, appellant admitted he had entered respondents' properties for recreation; that neither respondent had expressly invited him to enter; that he had paid no money or other consideration for his use of the property; and, that the failure of

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

respondents to take precautionary or warning measures was neither wilful nor malicious.

Respondents filed simultaneous motions for summary judgment contending that Civil Code section 846[1] precluded recovery because it relieved them of any duty to keep their premises safe for recreational riding or to give warning of any hazard in such use. The motions were granted and judgment was entered accordingly. ▮ Upon appeal therefrom, appellant contends that said section 846 has been abrogated by the Supreme Court's decision in *Rowland* v. *Christian* (1968) 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496]. For the following reasons, we are of the opinion that the contention is unsound.

Civil Code section 846 was enacted in 1963. It declared that a landowner had no duty to keep his premises safe for named recreational entry or use or to warn against hazards thereon even where permission was given unless, independently of its terms, the owner was otherwise liable (a) for wilful or malicious failure to guard or warn against a hazard; (b) where the injured user had directly paid a consideration to such owner for the entry; or (c) where the user had been expressly invited rather than merely permitted by the owner to enter the premises. In view of his answers to interrogatories, appellant has never contended that his claim of liability is predicated upon any of these exceptions. Until the promulgation of *Rowland* in 1968, a landowner's duties and

---

[1]Section 846 of the Civil Code, as amended, now provides as follows:

"An owner of any estate in real property owes no duty of care to keep the premises safe for entry or use by others for fishing, hunting, camping, water sports, hiking, spelunking, riding, including animal and all types of vehicular riding, rock collecting, or sightseeing or to give any warning of hazardous conditions, uses of, structures, or activities on such premises to persons entering for such purposes, except as provided in this section.

"An owner of any estate in real property who gives permission to another for entry or use for the above purposes upon the premises does not thereby (a) extend any assurance that the premises are safe for such purposes, or (b) constitute the person to whom permission has been granted the legal status of an invitee or licensee to whom a duty of care is owed, or (c) assume responsibility for or incur liability for any injury to person or property caused by any act of such person to whom permission has been granted except as provided in this section.

"This section does not limit the liability which otherwise exists (a) for willful or malicious failure to guard or warn against a dangerous condition, use, structure or activity; or (b) for injury suffered in any case where permission to enter for the above purposes was granted for a consideration other than the consideration, if any, paid to said landowner by the state; or (c) to any persons who are expressly invited rather than merely permitted to come upon the premises by the landowner.

"Nothing in this section creates a duty of care or ground of liability for injury to person or property."

liabilities toward persons injured upon his land was generally dependent upon the latter's status as trespasser, licensee or invitee determined under traditional common law concepts which we need not here review. *Rowland* discarded these distinctions in status as the prime factor determining a landowner's liability because they constituted a departure from the "fundamental rule" established in 1872 by Civil Code section 1714[2] which could not be justified except by statute or the existence of public policy considerations to support it. (69 Cal.2d at p. 112.) With some emphasis upon the subtleties, complexity and confusion that had developed in California case law because of the common law rules, the Supreme Court concluded that the rules "obscure rather than illuminate the proper considerations which should govern determination of [a landowner's] duty" and, in changed social and economic conditions, were no longer supported by public policy. (69 Cal.2d at p. 118.) At page 119 the court ruled: "The proper test to be applied to the liability of the possessor of land in accordance with section 1714 of the Civil Code is whether in the management of his property he has acted as a reasonable man in view of the probability of injury to others, and, although the plaintiff's status as a trespasser, licensee, or invitee may in the light of the facts giving rise to such status have some bearing on the question of liability, the status is not determinative."

The existence of section 846 as a statutory exception to section 1714 was not discussed by the *Rowland* court. Section 846 deals with specific recreational uses and was not remotely within the factual scope of a case involving injuries sustained by a guest in the bathroom of an apartment rented by a defendant when a porcelain faucet shattered his hand. However, appellant contends that, in the light of *Rowland's* holding and rationale, section 846 is in conflict with modern tort law because it requires a determination of the circumstances of an injured person's entry and the purpose thereof and thus, *post Rowland,* serves to perpetuate discarded common law classifications as determinative of a landowner's liability.

But in *Rowland,* the court made it clear that only the common law rules of immunity were under consideration. It said that "continued adherence to the common law distinctions can only lead to injustice or, if we are to avoid injustice, further fictions with the resulting complexity

---

[2]Civil Code section 1714 provides: "Everyone is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself. . . ."

and confusion." (69 Cal.2d at p. 119.) Also, the court recognized two alternative methods of creating exceptions to section 1714: first, legislative enactment; and, second, common law rules supported by clear public policy. The fact that the court found the common law exceptions that were a departure from the fundamental rule of section 1714 were no longer supported by public policy has nothing to do with the validity of the statutory exception provided by section 846. The sequences in *Rowland* that might buttress appellant's argument (passages referring to "modern social mores and humanitarian values" (p. 118), "industrialized urban society" vis-a-vis "a heritage of feudalism" (p. 116), etc.) are all addressed to the issue that was there under consideration, i.e., did public policy presently support the traditional common law distinctions as an exception to section 1714.

█ Under the fundamental doctrine of the separation of powers, restated in 1972 in article III, section 3[3] of the California Constitution, a statute is not subject to objection on the ground that it contravenes public policy. As a legislative enactment it becomes public policy. The judicial branch does not have power to abrogate or invalidate legislation unless it is clearly shown that it is violative of one or more provisions of the Constitutions of California or the United States (*People* v. *Globe Grain & Mill. Co.* (1930) 211 Cal. 121, 127 [294 P. 3]; *Lockard* v. *City of Los Angeles* (1949) 33 Cal.2d 453, 461-462 [202 P.2d 38, 7 A.L.R.2d 990]; *City of Bakersfield* v. *Miller* (1966) 64 Cal.2d 93, 100 [48 Cal.Rptr. 889, 410 P.2d 393], cert. den. 384 U.S. 988 [16 L.Ed.2d 1005, 86 S.Ct. 1890].) Further, the judicial power is limited to adjudication of the issues presented by the case under consideration. We have noted that section 846 was not within the scope of the issues presented by *Rowland.* It follows that the court did not and could not have abrogated or limited the application of section 846 or the immunities it extended to landowners.

We may note that appellant does not launch a constitutional attack on the section and no basis therefor is apparent to us. █ We may also note that in *Mark* v. *Pacific Gas & Electric Co.* (1972) 7 Cal.3d 170 [101 Cal.Rptr. 908, 496 P.2d 1276], the Supreme Court after a brief analysis of *Rowland,* in a four-three decision, reversed a nonsuit in favor of Pacific Gas and Electric Company in a case wherein plaintiff's principal had been electrocuted while standing on his fire escape and attempting to

[3]"The powers of state government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution."

remove a light bulb from a street lamp but unanimously affirmed a nonsuit in favor of the City of San Francisco because (among other reasons) section 818.6 of the Government Code exempted a public entity from liability for an injury caused by its failure to inspect or its negligent inspection of property other than property owned or controlled by it. The case constitutes a recognition that statutory exceptions to section 1714 of the Civil Code are to be given effect. In conclusion, whatever public policy analysis the Supreme Court may have made in justifying its rejection of the traditional common law distinctions that had theretofore determined a landowner's liability for injuries to persons upon his land, the court had no power to and did not attempt to invalidate section 846 or any other *statutory* exception to section 1714.

 With passing reference to appellant's argument that the Legislature did not intend section 846 to constitute an exception to section 1714, we find no merit therein because the section was amended in 1970, 1971, 1972, and in 1976, to clarify and include additional recreational uses. These amendments were after the date of *Rowland.* It is well settled that the Legislature is presumed to be cognizant of judicial decisions relevant to the subject matter of a statute. (*In re Marriage of Groner* (1972) 23 Cal.App.3d 115, 118-119 [99 Cal.Rptr. 765]; cf. also, *In re Estate of McDill* (1975) 14 Cal.3d 831 [122 Cal.Rptr. 754, 537 P.2d 874]; *Bishop* v. *City of San Jose* (1969) 1 Cal.3d 56 [81 Cal.Rptr. 465, 460 P.2d 137].) These amendments are indicative of a legislative policy to reduce the growing tendency of landowners to withdraw land from recreational access by removing the risk of gratuitous tort liability that a landowner might run unless he could successfully bar any entry to his property for enumerated recreational uses. Be that as it may, the fact that in the face of *Rowland* the Legislature has broadened the scope of the immunities created by the section is a clear indication that it intended an exception in favor of landowners as against the liability imposed by section 1714.

The judgment is affirmed.

Draper, P. J., and Devine, J.,* concurred.

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.